ARNOLDO CASILLAS, ESQ., SBN 158519
DANIEL W. GILLETTE, ESQ., SBN 244019
CASILLAS & ASSOCIATES
3777 Long Beach Blvd., Third Floor
Long Beach, CA 90807
Tel:  (562) 203-3030
Fax: (323) 297-2833
Email: acasillas@casillaslegal.com

MARK P. BRANDT, ESQ, SBN 112529
Law Office of Mark P. Brandt
23901 Calabasas Road, Suite 1063
Calabasas, CA 90302
Tel: (818) 222-2257
Fax: (818) 223-8937
Email: Mpbrandt@me.com

Attorneys for Plaintiff George Vasquez

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE VASQUEZ,<br><br>                Plaintiff,<br><br> vs.<br><br>RONALD BROWN, KELLY EMLING, MICHAEL SUZUKI, JENNY BROWN, RUBEN MARQUEZ, DANIEL KUPERBERG, MARK RIDLEY-THOMAS, LAW OFFICES OF THE LOS ANGELES COUNTY PUBLIC DEFENDER; COUNTY OF LOS ANGELES, AND DOE DEFENDANTS 1 THROUGH 10, INCLUSIVE,<br><br>                Defendants.<br>_____ | **CASE NO.:**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. § 1983**<br><br>**1.  DELIBERATE INDIFFERENCE TO CONSTITUIONAL VIOLATIONS**<br><br>**2. MUNICIPAL LIABILITY FOR CONSTITUIONAL VIOLATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

COMES NOW plaintiff GEORGE VASQUEZ, and alleges as follows:

### I.

### INTRODUCTION

1.     Plaintiff GEORGE VASQUEZ (hereafter also "Mr. Vasquez") was jailed for more than 17 years awaiting trial.   In violation of his constitutional rights, he was never brought to trial by his public defender attorneys despite his repeated requests that his case be brought to trial.  After the office of the public defender was removed as his attorney, the Los Angeles County Superior Court dismissed the civil detention action against him finding that the 18-year pre-trial detention was so presumptively prejudicial and oppressive that his due process rights were violated.

The trial court's conclusion that Mr. Vasquez's due process rights were violated was affirmed by the California Court of Appeal, Second Appellate District. A copy of the published opinion is attached hereto as exhibit 1.

The constitutional violations suffered by Mr. Vasquez resulted from the deliberate indifference to his circumstances by Ronald Brown, Kelly Emling, Michael Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg and Mark Ridley-Thomas, who were aware of his long unconstitutional detention and acquiesced in the violation of Mr. Vasquez's civil rights.

The purpose of the present action is to bring to light the complete failure of the Public Defender's office, The County of Los Angeles, and the individually named defendants to carry out their statutory and ethical duties to their clients, as well as to bring attention to the injustice carried out by the present defendants with respect to a large group of men who have been waiting in jail for decades.   The purpose of the of this action is also to make examples of Ronald Brown, Kelly Emling, Michael Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg and Mark Ridley-Thomas

to ensure that other similarly-situated public officials honor their promise to protect and defend the constitution of the United States.

## II.

## JURISDICTION AND VENUE

2.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourteenth Amendment of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the City of Los Angeles, California.

## III.

## PARTIES

4.     At all times relevant hereto, Plaintiff George Vasquez (hereafter also "Mr. Vasquez") is and was a resident of the County of Los Angeles, California.

5.     At all times relevant hereto defendant Ronald Brown was a resident of the County of Los Angeles.  Ronald Brown was appointed public defender of the County of Los Angeles in 2011 and served as the public defender for Los Angeles County until 2016.  Prior to that, he served as Assistant Public Defender from 2006 to 2011. During that time, he also held supervisorial and administrative positions.  As the Public Defender, he was vested by law with the responsibility of representing indigent defendants in Los Angeles County at all stages of the criminal proceedings and in all stages of civil detention proceedings related to indigent persons detained pursuant to California *Welfare and Institutions Code*, section 6600, et seq.

6.     As early as 2006, when defendant Ronald Brown began serving as Assistant Public Defender, he was informed of the present plaintiff's pending SVP

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

proceedings and he monitored Mr. Vasquez's case until Defendant Ronald Brown retired in 2016.

7. With respect to all conduct alleged herein, Defendant Ronald Brown acted under the color of law and in the course and scope of his employment with the County of Los Angeles. During all said time, he was also a high-ranking administrator and policy maker for the for the PD's office.

8. As the Public Defender for Los Angeles County and as Assistant Public Defender, defendant Ronald Brown was a policy maker with the authority to:

    a. develop, adopt, ratify, implement, modify, abolish, revoke and rescind all customs, practices, procedures and policies of the Law Offices of the Los Angeles County Public Defender;

    b. develop and implement specific training programs for public defender personnel, including deputy public defenders,

    c. secure budget allocations for the funding for specific units, personnel needs and cases within his office;

    d. replace or reassign personnel from to specific cases;

    e. order personnel to take specific actions in particular cases;

    f. declare that the public defender's office is "unavailable" and thereby have a case assigned to another public defender agency or to a private panel attorney;

    g. declare conflicts of interest; and,

    h. order or otherwise undertake all necessary measures to ensure that any case handled by the public defender's office would be brought to trial in a timely manner.

9. Defendant Ronald Brown monitored the civil detention proceedings of George Vasquez between 2000 until defendant Ronald Brown retired. Defendant Ronald Brown had specific knowledge Mr. Vasquez's civil detention proceedings

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   and, as spelled out herein below, was deliberately indifferent to his prolonged

2   detention and the resulting violation of Mr. Vasquez's civil rights.

3        10.    Defendant Ronald Brown also met monthly, and often times more

4   regularly, with defendant Mark Ridley-Thomas to discuss the operation and

5   management of The Law Offices of the Los Angeles County Public Defender

6   (hereafter also "the PD's office").  These meetings included discussions of

7   specialized units with the PD's office, including the SVP Unit, its case load,

8   individual cases handled by said unit -  including Mr. Vasquez's case, the backlog of

9   work in the SVP unit, the understaffing of that unit, and the extended time periods

10   that SVP Unit clients were being detained as the awaited trial.  Defendant Ronald

11   Brown regularly provided defendant Mark Ridley-Thomas with memoranda, emails,

12   reports, minutes of expanded meetings, budget requests, case summaries, case

13   management statistics and other written correspondence and documents regarding the

14   management and operation of the SVP Unit.

15        11.    Defendant Ronald Brown is sued in his personal capacity and in his

16   official capacity as a supervisory and administrative official for his own culpable

17   action or inaction in the training, supervision and/or control of his subordinates.  He

18   is also sued in his official capacity for his acquiescence in the constitutional

19   deprivations which this complaint alleges and for the conduct that showed a reckless

20   or callous indifference to the rights of others, including the present defendant.  This

21   defendant's affirmative conduct, as described herein below, involves his

22   acquiescence to, and ratification of, specific customs, practices and policies and

23   procedures carried out by his subordinates which this defendant knew, or should have

24   known, would inflict a constitutional violation upon the present plaintiff and other

25   similarly situated persons in this defendant's charge.

26        12.    At all times relevant hereto defendant Kelly Emling was a resident of the

27   County of Los Angeles, and, as relevant here, served as chief deputy public defender

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

with The Law Offices of the Los Angeles County Public Defender.  She had the responsibility of supervising and administering the representation of indigent defendants in all stages of civil detention proceedings related to persons detained pursuant to California *Welfare and Institutions Code*, section 6600, et seq., including SVP detainees awaiting trial. With respect to all conduct alleged herein, defendant Emling acted under the color of law and in the course and scope of her employment with the County of Los Angeles as an administrator of the SVP Unit.  As a chief deputy public defender, defendant Emling was also a policy maker with the authority to:

a.   develop, adopt, ratify, implement, modify, abolish, revoke and rescind all customs, practices, procedures and policies of the Law Offices of the Los Angeles County Public Defender;

b.   develop and implement specific training programs for public defender personnel, including deputy public defenders,

c.   propose budget allocations for the funding for specific units within his office;

d.   replace or reassign personnel from or to specific cases;

e.   order personnel to take specific actions in particular cases;

f.   declare that the public defender's office is "unavailable" and thereby have a case assigned to another public defender agency or to a private panel attorney;

g.   declare conflicts of interest; and,

h.   order or otherwise undertake all necessary measures to ensure that any case handled by the public defender's office would be brought to trial in a timely manner.

13.   Defendant Kelly Emling monitored the civil detention proceedings of George Vasquez.  As a result, defendant Kelly Emling had specific knowledge

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

regarding the civil detention proceedings for plaintiff George Vasquez and, as spelled out herein below, was deliberately indifferent to the violation of Mr. Vasquez's civil rights.  Defendant Kelly Emling also met monthly, and often more regularly, with defendant Mark Ridley-Thomas and defendants Brown and Michael Suzuki to discuss the operation and management of The Law Offices of the Los Angeles County Public Defender.  These meetings included discussions of SVP Unit, its case load, individual cases handled by said unit -  including Mr. Vasquez's case, the backlog of work in the unit, the understaffing of that unit, and the extended time periods that SVP Unit clients were being detained.  Defendant Kelly Emling regularly provided defendant Mark Ridley-Thomas with memoranda, emails, reports, budget requests, and other written correspondence and documents regarding the management and operation of the SVP Unit.

14.      Defendant Emling is sued in her personal capacity and in her official capacity as a supervisory official for her own culpable action or inaction in the training, supervision and/or control of her subordinates as well as for her indifference as well as for her indifference to the constitutional violations which resulted from her supervision of and administration of the SVP Unit.  She is also sued in her official capacity for her acquiescence in the constitutional deprivations which this complaint alleges and for the conduct carried out by her that showed a reckless or callous indifference to the rights of the present plaintiff.  This defendant's affirmative conduct, as described herein below, involves her acquiescence to, and ratification of, specific customs, practices and policies and procedures carried out by her subordinates which this defendant knew, or should have known, would inflict a constitutional violation upon the present plaintiff and other similarly situated persons in this defendant's charge.

15.      At all times relevant hereto defendant Michael Suzuki was a resident of the County of Los Angeles, and, as relevant here, served as Division Chief or other

7

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

supervisor or administrator with The Law Offices of the Los Angeles County Public Defender.  He had the responsibility of administering and supervising the representation of indigent defendants in all stages of civil detention proceedings related to persons detained pursuant to California Welfare and Institutions Code, section 6600, et seq., including SVP detainees awaiting trial.  With respect to all conduct alleged herein, defendant Suzuki acted under the color of law and in the course and scope of his employment with the County of Los Angeles as an administrator of the SVP Unit. As a Division Chief and/or as a supervisor in the PD's SUV unit, defendant Suzuki was also a policy maker with the authority to:

    a.    develop, adopt, ratify, implement, modify, abolish, revoke and rescind all customs, practices, procedures and policies of the Law Offices of the Los Angeles County Public Defender's SVP Unit;

    b.    develop and implement specific training programs for public defender personnel, including deputy public defenders working in the Law Offices of the Los Angeles County Public Defender's SVP Unit,

    c.    propose budget allocations for the funding for specific needs within the Law Offices of the Los Angeles County Public Defender's SVP Unit;

    d.    replace or reassign personnel in the SVP Unit from or to specific cases;

    e.    order personnel in the SVP Unit to take specific actions in particular cases;

    f.    declare that the public defender's office is "unavailable" and thereby have a case assigned to another public defender agency or to a private panel attorney;

    g.    declare conflicts of interest; and,

    h.    order or otherwise undertake all necessary measures to ensure that any case handled by the public defender's office would be brought to trial in a timely manner.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

16.     Defendant Suzuki was intimately familiar with Mr. Vasquez's case, with Mr. Vasquez's circumstances and with Mr. Vasquez's desire to proceed to trial. Defendant Suzuki personally represented Mr. Vasquez for more than 4 years before becoming a supervisor and administrator of the SVP Unit.  Mr. Suzuki continued to monitor the civil detention proceedings of George Vasquez after Mr. Suzuki became a supervisor and administrator in the SVP Unit.  As a result, defendant Suzuki had specific knowledge regarding the civil detention proceedings for plaintiff George Vasquez and, as spelled out herein below, was deliberately indifferent to the violation of Mr. Vasquez's civil rights which resulted from his long and unconstitutional detention.

17.     Defendant Suzuki also met monthly, and often more regularly, with defendant Mark Ridley-Thomas and defendants Brown and Emling to discuss the operation and management of PD's office.  These meetings included discussions of SVP Unit, its case load, individual cases handled by said unit -  including Mr. Vasquez's case, the backlog of work in the unit, the understaffing of that unit, and the extended time periods that SVP Unit clients were being detained.  Defendant Suzuki regularly provided defendant Mark Ridley-Thomas with memoranda, emails, reports, budget requests, case summaries and other written correspondence and documents regarding the management and operation of the SVP Unit.

18.     Defendant Suzuki is sued in his personal capacity and in his official capacity as a supervisory official for his own culpable action or inaction in the training, supervision and/or control of his subordinates as well as for his indifference to the constitutional violations which resulted from his supervision of and administration of the SVP Unit.  He is also sued in his official capacity for his acquiescence in the constitutional deprivations which this complaint alleges and for the conduct carried out by him that showed a reckless or callous indifference to the rights of others, including the present plaintiff.  This defendant's affirmative conduct,

9

as described herein below, involves his acquiescence to, and ratification of, specific customs, practices and policies and procedures carried out by his subordinates which this defendant knew, or should have known, would inflict a constitutional violation upon the present plaintiff and other similarly situated persons in this defendant's charge.

19.    At all times relevant hereto defendant Jenny Brown was a resident of the County of Los Angeles, and, as relevant here, served as a supervisor or administrator with The Law Offices of the Los Angeles County Public Defender.  She had the responsibility of administering and supervising the representation of indigent defendants in all stages of civil detention proceedings related to persons detained pursuant to California Welfare and Institutions Code, section 6600, et seq., including SVP detainees awaiting trial.  With respect to all conduct alleged herein, defendant Jenny Brown acted under the color of law and in the course and scope of her employment with the County of Los Angeles as an administrator of the SVP Unit.  As a supervisor and administrator in the PD's SUV unit, defendant Jenny Brown was also a policy maker with the authority to:

   a.    develop, adopt, ratify, implement, modify, abolish, revoke and rescind all customs, practices, procedures and policies of the Law Offices of the Los Angeles County Public Defender's SVP Unit;

   b.    develop and implement specific training programs for public defender personnel, including deputy public defenders working in the Law Offices of the Los Angeles County Public Defender's SVP Unit,

   c.    propose budget allocations for the funding for specific needs within the Law Offices of the Los Angeles County Public Defender's SVP Unit;

   d.    replace or reassign personnel in the SVP Unit from or to specific cases;

   e.    order personnel in the SVP Unit to take specific actions in particular cases;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

f.   declare that the public defender's office is "unavailable" and thereby have a case assigned to another public defender agency or to a private panel attorney;

g.   declare conflicts of interest; and,

h.   order or otherwise undertake all necessary measures to ensure that any case handled by the public defender's office would be brought to trial in a timely manner.

20.   Defendant Jenny Brown was intimately familiar with Mr. Vasquez's case, with Mr. Vasquez's circumstances and with Mr. Vasquez's desire to proceed to trial. Defendant Jenny Brown continued to monitor the civil detention proceedings of George Vasquez after she became a supervisor and administrator in the SVP Unit. As a result, defendant Jenny Brown had specific knowledge regarding the civil detention proceedings for plaintiff George Vasquez and, as spelled out herein below, was deliberately indifferent to the violation of Mr. Vasquez's civil rights which resulted from his long and unconstitutional detention.

21.   Defendant Jenny Brown also met monthly, and often more regularly, with defendant Mark Ridley-Thomas and defendants Ronald Brown, Emling, Suzuki, Marquez and Kuperberg to discuss the operation and management of PD's office. These meetings included discussions of SVP Unit, its case load, individual cases handled by said unit -  including Mr. Vasquez's case, the backlog of work in the unit, the understaffing of that unit, and the extended time periods that SVP Unit clients were being detained. Defendant Jenny Brown regularly provided defendant Mark Ridley-Thomas with memoranda, emails, reports, budget requests, case summaries and other written correspondence and documents regarding the management and operation of the SVP Unit.

22.   Defendant Jenny Brown is sued in her personal capacity and in her official capacity as a supervisory official for her own culpable action or inaction in

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   the training, supervision and/or control of her subordinates as well as for her

2   indifference to the constitutional violations which resulted from her supervision of

3   and administration of the SVP Unit.  She is also sued in her official capacity for her

4   acquiescence in the constitutional deprivations which this complaint alleges and for

5   the conduct carried out by her that showed a reckless or callous indifference to the

6   rights of others, including the present plaintiff.  This defendant's affirmative conduct,

7   as described herein below, involves his acquiescence to, and ratification of, specific

8   customs, practices and policies and procedures carried out by her subordinates which

9   this defendant knew, or should have known, would inflict a constitutional violation

10  upon the present plaintiff and other similarly situated persons in this defendant's

11  charge.

12       23.     At all times relevant hereto defendant Ruben Marquez was a resident of

13  the County of Los Angeles, and, as relevant here, served as Division Chief or other

14  supervisor or administrator with The Law Offices of the Los Angeles County Public

15  Defender.  He had the responsibility of administering and supervising the

16  representation of indigent defendants in all stages of civil detention proceedings

17  related to persons detained pursuant to California Welfare and Institutions Code,

18  section 6600, et seq., including SVP detainees awaiting trial.  With respect to all

19  conduct alleged herein, defendant Marquez acted under the color of law and in the

20  course and scope of his employment with the County of Los Angeles as an

21  administrator of the SVP Unit. As a Division Chief and/or as a supervisor in the PD's

22  SUV unit, defendant Marquez was also a policy maker with the authority to:

23       a.    develop, adopt, ratify, implement, modify, abolish, revoke and rescind

24             all customs, practices, procedures and policies of the Law Offices of the

25             Los Angeles County Public Defender's SVP Unit;

26  ////

27  ////

28

---

12

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

b.    develop and implement specific training programs for public defender personnel, including deputy public defenders working in the Law Offices of the Los Angeles County Public Defender's SVP Unit,

c.    propose budget allocations for the funding for specific needs within the Law Offices of the Los Angeles County Public Defender's SVP Unit;

d.    replace or reassign personnel in the SVP Unit from or to specific cases;

e.    order personnel in the SVP Unit to take specific actions in particular cases;

f.    declare that the public defender's office is "unavailable" and thereby have a case assigned to another public defender agency or to a private panel attorney;

g.    declare conflicts of interest; and,

h.    order or otherwise undertake all necessary measures to ensure that any case handled by the public defender's office would be brought to trial in a timely manner.

24.    Defendant Marquez was intimately familiar with Mr. Vasquez's case, with Mr. Vasquez's circumstances and with Mr. Vasquez's desire to proceed to trial. Mr. Marquez continued to monitor the civil detention proceedings of George Vasquez after Mr. Marquez became a supervisor and administrator in the SVP Unit.  As a result, defendant Marquez had specific knowledge regarding the civil detention proceedings for plaintiff George Vasquez and, as spelled out herein below, was deliberately indifferent to the violation of Mr. Vasquez's civil rights which resulted from his long and unconstitutional detention.

25.    Defendant Marquez also met monthly, and often more regularly, with defendant Mark Ridley-Thomas and defendants Ronald Brown, Emling, Suzuki, Jenny Brown and Kuperberg to discuss the operation and management of PD's office. These meetings included discussions of SVP Unit, its case load, individual cases

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   handled by said unit -  including Mr. Vasquez's case, the backlog of work in the unit,

2   the understaffing of that unit, and the extended time periods that SVP Unit clients

3   were being detained.  Defendant Marquez regularly provided defendant Mark Ridley-

4   Thomas with memoranda, emails, reports, budget requests, case summaries and other

5   written correspondence and documents regarding the management and operation of

6   the SVP Unit.

7          26.    Defendant Marquez is sued in his personal capacity and in his official

8   capacity as a supervisory official for his own culpable action or inaction in the

9   training, supervision and/or control of his subordinates as well as for his indifference

10  to the constitutional violations which resulted from his supervision of and

11  administration of the SVP Unit.  He is also sued in his official capacity for his

12  acquiescence in the constitutional deprivations which this complaint alleges and for

13  the conduct carried out by him that showed a reckless or callous indifference to the

14  rights of others, including the present plaintiff.  This defendant's affirmative conduct,

15  as described herein below, involves his acquiescence to, and ratification of, specific

16  customs, practices and policies and procedures carried out by his subordinates which

17  this defendant knew, or should have known, would inflict a constitutional violation

18  upon the present plaintiff and other similarly situated persons in this defendant's

19  charge.

20         27.    At all times relevant hereto defendant Daniel Kuperberg was a resident

21  of the County of Los Angeles, and, as relevant here, served as Division Chief or other

22  supervisor or administrator with The Law Offices of the Los Angeles County Public

23  Defender.  He had the responsibility of administering and supervising the

24  representation of indigent defendants in all stages of civil detention proceedings

25  related to persons detained pursuant to California Welfare and Institutions Code,

26  section 6600, et seq., including SVP detainees awaiting trial.  With respect to all

27  conduct alleged herein, defendant Kuperberg acted under the color of law and in the

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

course and scope of his employment with the County of Los Angeles as an administrator of the SVP Unit. As a Division Chief and/or as a supervisor in the PD's SUV unit, defendant Kuperberg was also a policy maker with the authority to:

a.     develop, adopt, ratify, implement, modify, abolish, revoke and rescind all customs, practices, procedures and policies of the Law Offices of the Los Angeles County Public Defender's SVP Unit;

b.     develop and implement specific training programs for public defender personnel, including deputy public defenders working in the Law Offices of the Los Angeles County Public Defender's SVP Unit,

c.     propose budget allocations for the funding for specific needs within the Law Offices of the Los Angeles County Public Defender's SVP Unit;

d.     replace or reassign personnel in the SVP Unit from or to specific cases;

e.     order personnel in the SVP Unit to take specific actions in particular cases;

f.     declare that the public defender's office is "unavailable" and thereby have a case assigned to another public defender agency or to a private panel attorney;

g.     declare conflicts of interest; and,

h.     order or otherwise undertake all necessary measures to ensure that any case handled by the public defender's office would be brought to trial in a timely manner.

28.     Defendant Kuperberg was intimately familiar with Mr. Vasquez's case, with Mr. Vasquez's circumstances and with Mr. Vasquez's desire to proceed to trial. Mr. Kuperberg continued to monitor the civil detention proceedings of George Vasquez after Mr. Kuperberg became a supervisor and administrator in the SVP Unit. As a result, defendant Kuperberg had specific knowledge regarding the civil detention proceedings for plaintiff George Vasquez and, as spelled out herein below,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    was deliberately indifferent to the violation of Mr. Vasquez's civil rights which

2    resulted from his long and unconstitutional detention.

3        29.    Defendant Kuperberg also met monthly, and often more regularly, with

4    defendant Mark Ridley-Thomas and defendants Ronald Brown, Emling, Suzuki,

5    Jenny Brown and Marquez to discuss the operation and management of PD's office.

6    These meetings included discussions of SVP Unit, its case load, individual cases

7    handled by said unit -  including Mr. Vasquez's case, the backlog of work in the unit,

8    the understaffing of that unit, and the extended time periods that SVP Unit clients

9    were being detained.  Defendant Kuperberg regularly provided defendant Mark

10   Ridley-Thomas with memoranda, emails, reports, budget requests, case summaries

11   and other written correspondence and documents regarding the management and

12   operation of the SVP Unit.

13       30.    Defendant Kuperberg is sued in his personal capacity and in his official

14   capacity as a supervisory official for his own culpable action or inaction in the

15   training, supervision and/or control of his subordinates as well as for his indifference

16   to the constitutional violations which resulted from his supervision of and

17   administration of the SVP Unit.  He is also sued in his official capacity for his

18   acquiescence in the constitutional deprivations which this complaint alleges and for

19   the conduct carried out by him that showed a reckless or callous indifference to the

20   rights of others, including the present plaintiff.  This defendant's affirmative conduct,

21   as described herein below, involves his acquiescence to, and ratification of, specific

22   customs, practices and policies and procedures carried out by his subordinates which

23   this defendant knew, or should have known, would inflict a constitutional violation

24   upon the present plaintiff and other similarly situated persons in this defendant's

25   charge.

26

27   ////

28   ////

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

31.     At all times relevant hereto defendant Mark Ridley-Thomas was a resident of the County of Los Angeles.  He is and has been a member of the Board of Supervisors of Los Angeles County since 2008.  As part of his duties as a member of the Los Angeles County Board of Supervisors, he was assigned with the responsibility of directly overseeing, managing, directing and/or controlling defendant Law Offices of the Los Angeles County Public Defender. With respect to all conduct alleged herein, defendant Ridley-Thomas acted under the color of law and in the course and scope of his authority as a member of the Board of Supervisors of the County of Los Angeles.

32.     Defendant Mark Ridley-Thomas was a policy maker for defendant County of Los Angeles and for defendant Law Offices of the Los Angeles County Public Defender and he had the authority to:

a.     develop, adopt, ratify, implement, modify, abolish, revoke and rescind all customs, practices, procedures and policies of the Law Offices of the Los Angeles County Public Defender;

b.     instruct Ronald Brown, Kelly Emling and Michael Suzuki to declare that the public defender's office is "unavailable" and thereby have a case assigned to another public defender agency or to a private panel attorney;

c.     develop and implement specific training programs for all personnel in the Law Offices of the Los Angeles County Public Defender, including deputy public defenders,

d.     propose budget allocations for the funding for specific units within the Law Offices of the Los Angeles County Public Defender;

e.     instruct Ronald Brown and Kelly Emling to replace or reassign personnel within the Law Offices of the Los Angeles County Public Defender; and,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

f.     instruct Ronald Brown and Kelly Emling to order personnel, including defendant Ronald Brown and defendant Kelly Emily to take specific actions in particular cases.

33.     Defendant Mark Ridley-Thomas oversaw, monitored and/or managed defendant The Law Offices of the Los Angeles County Public Defender.  In carrying out his oversight of said office, he met monthly, and often more regularly, with defendants Ronald Brown, Kelly Emling and Michael Suzuki to discuss the operation and management of The Law Offices of the Los Angeles County Public Defender. Defendant Mark Ridley-Thomas has the authority or order or otherwise compel defendant The Office of the Public Defender and defendants Brown, Emling and Suzuki to "declare unavailability" in specific SVP cases.

34.     These regular meetings included discussions of the SVP Unit, it's case load, individual cases handled by said unit -  including Mr. Vasquez's case, the backlog of work in the unit, the understaffing of that unit, and the extended time periods that SVP Unit clients were being detained.  Defendant Mark Ridley-Thomas requested and received regular memoranda, emails, reports, budget requests, and other written correspondence and documents from defendants Brown, Emling, Suzuki and other members of the Public Defender's Office regarding the management and operation of the SVP Unit, including the status of the civil detention proceedings of George Vasquez. Defendant Ridley-Thomas had specific knowledge regarding the civil detention proceedings for plaintiff George Vasquez and, as spelled out herein below, was deliberately indifferent to the violation of Mr. Vasquez's civil rights.

35.     Defendant Mark Ridley-Thomas is sued in his personal capacity and in his official capacity as a supervisory official for his own culpable action or inaction in the training, supervision and/or control of his subordinates, and for his specific conduct and deliberate indifference which resulted in the violation of the present Plaintiff's constitutional rights.  He is also sued in his official capacity for his

acquiescence in the constitutional deprivations which this complaint alleges and for his conduct which showed a reckless or callous indifference to the rights of the present plaintiff and other SVP detainees which are and were similarly situated. This defendant's affirmative conduct, as described herein below, involves his acquiescence to, and ratification of, specific customs, practices and policies and procedures carried out by his subordinates which this defendant knew, or should have known, would inflict a constitutional violation upon the present plaintiff and other similarly situated persons in this defendant's charge.

36.     At all times mentioned herein, defendant County of Los Angeles was a public entity duly organized and existing under and by virtue of the laws of the state of California, with the capacity to sue and be sued. Defendant County of Los Angeles is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents, departments, subdivisions and agencies. Defendant County of Los Angeles operates, manages, directs and/or controls defendant Law offices of the Los Angeles County Public Defender which is also a separate public entity. At all times relevant to the facts alleged herein, Defendant County of Los Angeles was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its departments, subdivisions, and employees, complied with Constitution of the United States.

37.     At all times mentioned herein, defendant Law offices of the Los Angeles County Public Defender was a public entity, and subdivision of the County of Los Angeles, duly organized and existing under and by virtue of the laws of the state of California and the Charter of the County of Los Angeles, with the capacity to sue and be sued. Defendant Law Offices of the Los Angeles County Public Defender is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents, departments, subdivisions and Units, including its SVP Unit.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

38.     According to defendant Law Offices of the Los Angeles County Public Defender, its SVP Unit was established to defend those persons who were being committed to state mental institutions for potentially an indefinite term of commitment, and that its SVP Unit consists of experienced attorneys and paralegals practicing exclusively in this highly specialized area of law.

39.     DOE defendants 1 through 10, inclusive and each of them, are and were at all times relevant here, members of the Los Angeles County Board of Supervisors, appointed or elected officials of the County of Los Angeles, and agents, employees and/or representatives of defendant County of Los Angeles acting within their capacity as employees, agents and servants of the defendant County of Los Angeles and/or Law Offices of the Los Angeles County Public Defender.  Said defendants were policy-makers with the authority to develop, modify, amend, ratify, implement, revoke, and rescind all policies, practices, procedures and customs of the Law Offices of the Los Angeles County Public Defender.  Said defendants at all times alleged herein where acting within said course and scope of that employment and agency, and at all times relevant hereto were acting under the color of law.  Said Defendants are sued individually and in their official capacity as supervisors, employees, agents and/or representatives of defendant County of Los Angeles.

40.     The present plaintiff is ignorant of the true names and capacities of defendants sued herein as DOE defendants 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the acts and/or omissions of said fictitiously named defendants.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

# IV.

## STATEMENT OF RELEVANT FACTS

### A.

**The Los Angeles County Superior Court and the California Court of Appeal, Second Appellate District have determined that Mr. Vasquez's Due Process rights were violated by the 17-year pre-trial detention.**

41.     On January 8, 2018, the Honorable James Bianco, Judge of the Los Angeles County Superior Court, issued an order finding that the 17-year pre-trial detention of George Vasquez violated his due process rights under the Fourteenth Amendment of the US Constitution, and he dismissed the petition for civil detention which was filed on August 25, 2017.

42.     On September 12, 2018, the California Court of Appeal, Second Appellate District, denied the petition for writ of mandate filed by the Los Angeles County District Attorney's Office on behalf of the State of California.  The Court of Appeal denied the petition on the ground that the trial court did not err in finding that Mr. Vasquez's due process right to a timely trial had been violated.

43.     The Court of Appeal notes that an 11-month delay in getting to trial on an SVP petition may alone violate a detainee's due process rights, citing *People v. Litmon (Litmon II)*, (2008) 162 Cal. App. 4th 1, 27.

44.     To determine if there has been a violation of plaintiff's due process rights and speedy trial rights, the Court of Appeal applied the tests established by the United States Supreme Court in *Mathews v. Eldridge*, (1976) 424 U.S. 319 and *Barker v. Wingo*, (1972) 407 U.S. 514, and the court concluded as follows:

  i.     Mr. Vasquez's 17 years of pre-trial confinement is by any measure an "extraordinary" delay that triggers the *Baker* inquiry and weighs against the state.  The Court also noted that the District Attorney's Office

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

conceded the 17-year delay triggered a speedy trial analysis under *Barker*;

j.    The risk of his erroneous deprivation of liberty was enormous given that the hired evaluators had split opinions as to whether Mr. Vasquez even qualified for civil confinement under the SVP statute and that he had been in the sex offender treatment program starting in September 2015;

k.    Had his case been brought to trial in a timely fashion and had he been committed, he would have been committed for only a two-year period;

l.    There existed no fiscal or administrative burdens on the government that could have possibly justified the lengthy pre-trial detention suffered by Mr. Vasquez;

m.    The 17-year delay was presumptively prejudicial and oppressive to a maximum degree;

n.    The "extraordinary" length of the delay resulted from "a systemic 'breakdown in the public defender system,'"; and,

o.    Often, no reasons were given for the numerous stipulated delays.

45.    The court concluded that the lengthy detention was not of Mr. Vasquez's own making, that he made it clear that he wanted a trial while his public defender waived his appearance and stipulated to continuances for years at a time, and that he was faced with a Hobson's choice of acquiescing to his attorney's strategies, whatever they were, or go to trial with an attorney that was not timely prepared. As such, the court rejected the argument that Mr. Vasquez was responsible for the long delay.

46.    Ultimately, the court concluded that the long 17-year pre-trial detention of Mr. Vasquez was presumptively prejudicial and that such detention violated his due process rights in that it resulted from "a systemic 'breakdown in the public defender system.'"

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1

2

**B.**

3

**Plaintiff's 18-year ordeal as an SVP pre-trial detainee.**

4        47.     Mr. Vasquez served a 5-year sentence in state prison.  Near the end of

5 his sentence, and before he was released from prison, on November 7, 2000, the Los

6 Angeles County District Attorney's office filed a petition for civil commitment

7 pursuant to California *Welfare & Institutions Code*, section 6600 et seq.  Because Mr.

8 Vasquez's case was delayed more than ten years, some Court Reporter transcripts

9 from the earlier hearings on his civil commitment are not available. Court hearings

10 were held in his case on July 10, August 28, October 5, 11, 18, and December 8,

11 2001, but because the court has a policy of destroying court reporter transcripts after

12 ten years, and this case was delayed by 17 years, these transcripts are no longer

13 available.

14        48.     In 2000, the Superior Court issued an order for Mr. Vasquez's removal

15 from prison so he could be arraigned on the petition.  Mr. Vasquez appeared and

16 entered a denial to the petition. The court, the Honorable Kevin Ross presiding,

17 appointed counsel on his behalf and set the next appearance as a probable cause

18 hearing setting for February 13, 2002.  The court set a pretrial date for February 27,

19 2002, with a time waiver plus 60, and a non-appearance for Mr. Vasquez.

20        49.     Throughout Mr. Vasquez's over-17-year detention, he was represented

21 by attorneys from the Public Defender's Office.

22        50.     On February 19, 2002, Mr. Vasquez turned 29 while in custody awaiting

23 trial.

24        51.     On February 19, 2003, Mr. Vasquez turned 30 while in custody awaiting

25 trial.  More than a calendar year passed without any meaningful progress on the part

26 of the Public Defender's Office in advancing Mr. Vasquez's case toward trial.

27

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

52.     On March 21, 2003, a different bench officer, Judge Henry Barela, presided at the hearing.  Michael Suzuki from the Public Defender's Office represented Mr. Vasquez.  The court heard Respondent's motion that requested a new probable cause hearing because the trial court's ruling from the prior hearing was defective.  Because Atascadero Hospital would release Mr. Vasquez if the court granted the motion, Respondent's counsel and the state's attorney agreed that the court would order new evaluations for further proceedings on this issue.  The case was set for a nonappearance by Mr. Vasquez on May 28, 2003.

53.     On June 18, 2003, the court set the updated hearing date to September 17, 2003, and noted that Mr. Suzuki appeared under Penal Code section 977 for Mr. Vasquez.

54.     On September 9, 2003, the court held a further hearing for probable cause before the Honorable Henry Barela.  Dr. Korpi testified that he had not spoken to Mr. Vasquez since July 2000 while Vasquez was still at the county jail, but his opinion is that Mr. Vasquez is not amenable to treatment.  Dr. Updegrove testified to his opinion that Mr. Vasquez would present a serious and well-founded risk of reoffending if released into the community, but he did not interview Mr. Vasquez or look at any updated documents to reach this conclusion.

55.     On November 13, 2003, Mr. Suzuki appeared under Penal Code section 977 for Mr. Vasquez and asked that the matter be put over for pretrial until January 27, 2004, which was granted.

56.     On January 27, 2004, the matter was set for pretrial, and on that date Mr. Vasquez's counsel, Mr. Suzuki, asked for a continuance to April 20, 2004, with a nonappearance by Mr. Vasquez which was granted.

57.     On February 19, 2004, Mr. Vasquez turned 31 while in custody awaiting trial.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

58.     On February 19, 2005, Mr. Vasquez turned 32 while in custody awaiting trial.  Mr. Suzuki did not contact Mr. Vasquez during the previous 12 months and made no efforts to advance Mr. Vasquez's case toward trial.

59.     On February 19, 2006, Mr. Vasquez turned 33 while in custody awaiting trial.  Mr. Suzuki did not contact Mr. Vasquez during the previous 12 months and made no efforts to advance Mr. Vasquez's case toward trial.

60.     On February 19, 2007, Mr. Vasquez turned 34 while in custody awaiting trial.  Mr. Suzuki did not contact Mr. Vasquez during the previous 12 months and made no efforts to advance Mr. Vasquez's case toward trial.

61.     Deputy Public Defender Omar Hazel became Mr. Vasquez's lawyer on September 13, 2007, according to the September 13, 2007, minute order.  Mr. Hazel took over the case from Mr. Suzuki at this point after more than seven years without any meaningful progress in advancing Mr. Vasquez's case toward trial, including the previous three years in which Mr. Suzuki did no work whatsoever on Mr. Vasquez's case.

62.     On February 19, 2008, Mr. Vasquez turned 35 while in custody awaiting trial.  Mr. Hazel did not contact Mr. Vasquez during the previous 12 months and made no efforts to advance Mr. Vasquez's case toward trial.

63.     On November 8, 2008, Mr. Vasquez was represented by Omar Hazel from the Public Defender's Office who appeared before the Honorable Clifford L. Klein under Penal Code section 977 without Mr. Vasquez.  Mr. Hazel asked for a continuance to March 10, 2009.

64.     On February 19, 2009, Mr. Vasquez turned 36 while in custody awaiting trial.

65.     On March 10, 2009, Mr. Hazel appeared before the Honorable Maria Stratton under Penal Code section 977 who set the case for trial for March 10, 2010.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

66.     On December 10, 2009, Mr. Hazel appeared before the Honorable Maria Stratton under Penal Code section 977 and a pretrial hearing was set for January 6, 2010.

67.     On January 6, 2010, Mr. Hazel appeared before the Honorable Maria Stratton and waived the appearance of Mr. Vasquez without his permission. A pretrial was set for February 3, 2010, and the court admonished counsel to be ready for trial in March 2010 or soon afterward.

68.     On February 3, 2010, Mr. Hazel appeared before the Honorable Melissa Widdifield and waived Mr. Vasquez's appearance without his permission. The court set the last pretrial before trial for March 9, 2010.

69.     On February 10, 2010, Mr. Hazel appeared before the Honorable Harold Shako and waived the appearance for Mr. Vasquez without his permission. Mr. Hazel informed the court there were no updates and evaluations and suggested the next court date be April 21, 2010.  The case was set for a pretrial on April 21, 2010.

70.     On February 19, 2010, Mr. Vasquez turned 37 while in custody awaiting trial.

71.     On March 9, 2010, Mr. Hazel represented Mr. Vasquez before the Honorable Melissa Widdiefield. A pretrial was set for April 12, 2010, with Mr. Vasquez's appearance and speedy trial waived by Mr. Hazel without Mr. Vasquez's permission.

72.     On April 12, 2010, Mr. Hazel represented Mr. Vasquez before the Honorable Melissa Widdiefield and explained that he would soon be seeing Mr. Vasquez and wanted to propose the option of having a court trial to him. Mr. Hazel waived Mr. Vasquez's time without his authorization.

73.     On May 6, 2010, Mr. Hazel appeared, without Mr. Vasquez being present, before the Honorable Connie Drath.  Mr. Hazel indicated that Mr. Vasquez was inclined to have a court trial but wanted Mr. Hazel to file a *Ronje* motion, and it

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

will take him three to four weeks to do that. The matter was continued to June 8, 2010, with a nonappearance by Mr. Vasquez.

74.     On June 8, 2010, Mr. Hazel appeared, without Mr. Vasquez being present, before the Honorable Melissa Widdiefield. Mr. Hazel filed the *Ronje* motion that day and it was heard that day. The court ruled that *Ronje* does not provide for dismissal of the case as a form of relief but new evaluations, a new probable cause hearing and new evaluators are appointed. The court was concerned about there not being a nonappearance and time waiver in the file. Mr. Hazel represented that he had one and would bring it in the next day. Mr. Hazel did not. The next court date was set for September 28, 2010.

75.     On September 28, 2010, Mr. Hazel appeared, without Mr. Vasquez being present yet again, before the Honorable Melissa Widdiefield. On that day, the court set a probable cause hearing for February 15-16, 2011, by video with Mr. Hazel waiving time for Mr. Vasquez.

76.     On February 19, 2011, Mr. Vasquez turned 38 while in custody awaiting trial.

77.     On April 21, 2011, Mr. Hazel appeared, without Mr. Vasquez being present, before the Honorable Carlos Vasquez. Mr. Hazel told the court that they were awaiting updated reports. The matter was continued to May 11, 2011.

78.     On May 23, 2011, Mr. Hazel appeared, without Mr. Vasquez being present, before the Honorable Carlos Vasquez. Mr. Hazel waived Mr. Vasquez's appearance without his authorization, and the court set a probable cause hearing for November 2-3, 2011.

79.     On November 2, 2011, Mr. Hazel appeared by telephone and said he had pneumonia and requested that the matter be continued until January 3, 2012. The court continued the matter until January 3, 2012, and January 6, 2012.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

80.     On February 1, 2012, Mr. Hazel appeared, without Mr. Vasquez being present, before another new judge, the Honorable Elaine Mandel.  Mr. Hazel waived Mr. Vasquez's appearance without his authorization, and the court set new dates for the probable cause hearing for May 14, 18 and 25, 2012.

81.     On February 19, 2012, Mr. Vasquez turned 39 while in custody awaiting trial.

82.     On January 23, 2013, Ms. Terry Shenkman appeared for Mr. Vasquez before the Honorable Elaine Mandel and waived the appearance for Mr. Vasquez. On this date, Ms. Shenkman requested a pretrial date of February 26, 2013, but she requested that the court arrange for Mr. Vasquez to appear, explaining, "*He has not made an appearance for some time*."

83.     On February 19, 2013, Mr. Vasquez turned 40 while in custody awaiting trial, his 13th birthday in civil detention without trial.

84.     On June 4, 2013, Mr. Vasquez was present by video camera and represented by Ms. Shenkman before the Honorable Elaine Mandel. The court denied a motion filed by Ms. Shenkman on Mr. Vasquez's behalf to remove Dr. Korpi and Dr. Updegrove for actual bias. The court set the matter for July 23, 2013.

85.     On February 19, 2014, Mr. Vasquez turned 41 while in custody awaiting trial, his 14th birthday in civil detention without trial.

86.     On June 13, 2014, Ms. Shenkman represented Mr. Vasquez, who was present by video, before the Honorable Elaine Mandel.  The hearing was to determine a *Reilly* motion filed for Mr. Vasquez requesting a new probable cause hearing. The court denied the motion.  Ms. Shenkman asked that a trial date not be set because she may be taking a writ and doing depositions.  The court responded, "This is a very, very old case. The petition was filed way back in 2000. It is a 14-year-old case. This case should proceed to trial as soon as possible."  Recognizing that no meaningful work had been done on Mr. Vasquez's case, Ms. Shenkman responded, "No, I have a

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

say in this. There is pretrial work that needs to be done. A trial date should not be selected until I know I'm ready to select a trial date." The court responded that the case was filed in 2000 and "Mr. Vasquez has a right to be brought to trial." The next court date was set for July 25, 2014.

87.     On July 25, 2014, Ms. Shenkman represented Mr. Vasquez who was present by video, before the Honorable Elaine Mandel.  Counsel for the state informed the court that Dr. Upedegrove who prepared one of the reports had retired and a new replacement doctor needed to be appointed and that Dr. Korpi's report would also soon be stale. The court set the next court date for October 27, 2014.

88.     On October 27, 2014, Ms. Shenkman represented Mr. Vasquez who was present by video, before the Honorable Elaine Mandel.  On this date, counsel for the state reported that she had Dr. Misaka's report, who replaced Dr. Updegrove, but was still waiting for an updated report from Dr. Korpi.  The court set the next hearing for December 8, 2014.

89.     On December 8, 2014, Ms. Shenkman represented Mr. Vasquez who was present by video before the Honorable James Bianco.  The attorney for the state informed the court that she was awaiting an updated report from Dr. Korpi.  Ms. Shenkman informed the court that her office had suffered a reduction of lawyers by fifty percent and a reduction of paralegals by fifty percent and that she had lost her paralegal and her workload had greatly increased.  The next court date was set for January 26, 2015.

90.     On January 26, 2015, Ms. Shenkman represented Mr. Vasquez who was present by video before the Honorable James Bianco.  Ms. Shenkman's request to continue the trial date that was set for April 27, 2015, was denied. The next court date was set for March 25, 2015.

91.     On February 19, 2015, Mr. Vasquez turned 42 while in custody awaiting trial, his 15th birthday in civil detention without trial.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

92.      On March 26, 2015, Ms. Shenkman represented Mr. Vasquez who was present by video before the Honorable James Bianco.  Ms. Shenkman had filed a motion to continue the trial date. The motion to continue was trailed to April 17, 2015.

93.      On April 17, 2015, Ms. Shenkman represented Mr. Vasquez who was present by video before the Honorable James Bianco.  The motion to continue again was trailed to April 22, 2015.

94.      On April 22, 2015, Ms. Shenkman represented Mr. Vasquez who was present by video before the Honorable James Bianco.  The court found good cause and granted Ms. Shenkman's motion to continue the trial date. A new trial date was set for September 15, 2015, and the court added that there be no more continuances unless there was something new.  A pretrial date was set for July 8, 2015.

95.      On November 17, 2015, Ms. Shenkman represented Mr. Vasquez who was present by video before the Honorable James Bianco.  The court vacated the trial date set for March 8, 2016, after Ms. Shenkman explained that there had been a hold-up in setting depositions for the expert witnesses. The court set a new trial date for May 11, 2016, subject to witness schedules.

96.      On December 1, 2015, Ms. Shenkman represented Mr. Vasquez who was present by video before the Honorable James Bianco. The court set a pretrial for December 8, 2015.

97.      On December 8, 2015, Ms. Shenkman represented Mr. Vasquez who was present by video before the Honorable James Bianco.  To accommodate schedules, the court reset the trial date for May 12, 2016.  A pretrial date was set for January 21, 2016.

98.      On January 21, 2016, Ms. Shenkman represented Mr. Vasquez who was present by video before another new judge, the Honorable Laura Hymowitz.  Ms. Shenkman informed the court that there was a housing issue in that a SVP client had

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   been assaulted at the jail and Mr. Vasquez did not want to attend trial unless he could

2   be assured of safe housing. The case was set for a pretrial hearing on March 10, 2016.

3          99.    On February 19, 2016, Mr. Vasquez turned 43 while in custody awaiting

4   trial, his 16th birthday in civil detention without trial.

5          100.   On March 10, 2016, Ms. Shenkman represented Mr. Vasquez who was

6   present by video before the Honorable James Bianco.  Ms. Shenkman inquired about

7   resetting the trial date because of the need to prepare a motion that requested safe

8   housing for Mr. Vasquez when he attends trial and because there is an issue with

9   getting the discovery of a recorded interview from Dr. Korpi.  The trial court

10  requested counsel to confer with witnesses regarding a June trial date before making

11  a ruling on a motion to continue the trial date.  The status conference was continued

12  to March 29, 2016.

13         101.    On March 29, 2016, Ms. Shenkman represented Mr. Vasquez who

14  was present by video before another new judge, the Honorable Harold Shabo.  Upon

15  Ms. Shenkman's motion to continue the trial date, the court granted the motion and

16  reset the trial date for August 3, 2016.

17         102.    On June 14, 2016, Ms. Shenkman represented Mr. Vasquez who was

18  present by video before the Honorable James Bianco. The motion regarding Mr.

19  Vasquez's housing was continued to July 5, 2016.

20         103.    On July 5, 2016, Ms. Shenkman represented Mr. Vasquez who was

21  present by video before the Honorable James Bianco.  The trial date was now set in

22  January 2017 and the court set a pretrial status conference for November 17, 2016.

23  The court indicated that the housing motion may not be ripe because Mr. Vasquez

24  was housed at Coalinga State Hospital, not with the Sheriff's Department. The

25  motion regarding Mr. Vasquez's housing was continued to September 27, 2016.

26         104.    On September 27, 2016, Ms. Shenkman represented Mr. Vasquez who

27  was present by video before the Honorable James Bianco.  Ms. Shenkman informed

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

the court that her office had plans to transfer her. Ms. Shenkman strongly opposed the proposed transfer knowing that this would seriously prejudice Mr. Vasquez, and would result in further violation of his constitutional rights to a speedy trial.  She conferred with her supervisors, defendants Jenny Brown, Michael Suzuki, Ruben Marquez, and Daniel Kuperberg, and expressed her grave concerns that her transfer would cause an unreasonable delay in getting Mr. Vasquez's case to trial and would subject the Public Defender's Office to a *Litmon* motion.  Said defendants ignored Ms. Shenkman's reasonable protestations.  The status conference remained set for November 17, 2016.

105.   Defendants Jenny Brown, Michael Suzuki, Ruben Marquez, and Daniel Kuperberg transferred Ms. Terry Shenkman to a different assignment against her objections removing her from the SVP Unit, and from her representation of George Vasquez.  In doing so, they knew that this transfer would cause a further extended delay in the bringing of Mr. Vasquez's case to trial.  The transfer of Ms. Shenkman to another unit was done maliciously by said defendants and as part of said defendants' personal vendetta against Ms. Shenkman.  Up to that point, Ms. Shenkman was the only attorney in the Public Defender's Office that had made meaningful progress in the advancement of Mr. Vasquez's case towards trial.  Said defendants were indifferent to Mr. Vasquez's constitutional rights and did not care that he had been waiting 16 years for his case to be brought to trial.

106.   On November 17, 2016, David Santiago represented Mr. Vasquez who was present by video before the Honorable James Bianco.  Mr. Santiago indicated he was new to the case and asked to vacate the January 17, 2017, trial date.

107.   When asked to waive time, Mr. Vasquez told the court, "I am not willing to waive my right to have a trial in a timely manner. Nor am I willing to waive my right to have prepared counsel. These constant changes in counsel have denied me both. Enough is enough."  The court indicated it was concerned whether the Public

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Defender's Office is able to represent Mr. Vasquez in a timely manner at this point. Mr. Santiago, in recognition of what was obvious to anyone paying attention, admitted, "I share the court's concern and I don't think Mr. Vasquez is being treated fairly by my office either."  Mr. Santiago was upset that Ms. Shenkman had been transferred on the eve of Mr. Vasquez's trial and he was very concerned for the obvious violation of Mr. Vasquez's constitutional rights.  Mr. Santiago was concerned that he, himself, was being subjected to discipline under the state bar rules. Nonetheless, the case was set for a status conference on December 15, 2016. Trial remained set for January 17, 2017.

108.     On December 15, 2016, a new Public Defender, Ellen Coleman, represented Mr. Vasquez. Ms. Coleman asked for a continuance of the trial date until April of 2017. The court asked Mr. Vasquez if he was willing to waive time.  Mr. Vasquez responded that he wanted to read his statement. Mr. Vasquez stated, "I do not like this office acting like I am unable to think for myself. . . I am a bit slow. . . Ms. Coleman is more concerned about covering up what the Public Defender's Office has done to me and my case than representing me. . . I do not want her as my attorney. .."  At this point, the court closed the courtroom to conduct a *Marsden* hearing.

109.   Mr. Vasquez's request to not be represented by the Public Defender's Office was granted.  A status conference was set for December 29, 2016.

110.   On December 22, 2016, Mark Brandt from the Bar Panel was appointed to represent Mr. Vasquez.  Mr. Vasquez appeared by video, before the Honorable Judge Bianco. The case was set for a status conference on February 21, 2017.

111.     On February 10, 2017, Dr. Douglas S. Korpi reported that Mr. Vasquez does not meet the criteria of being a sexually violent predator.

112.     On February 19, 2017, Mr. Vasquez turned 44 while in custody awaiting trial, his 17th birthday in civil detention without trial.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

113.   In August 2017, Mr. Brandt filed a motion to dismiss civil detention proceedings against Mr. Vasquez.

114.   On January 8, 2018, the trial court granted the motion to dismiss civil detention proceedings, finding that the 17-year delay in bringing Mr. Vasquez's case to trial constituted a violation of his due process rights.

115.   The Los Angeles County District Attorney's Office appealed the decision of the trial court in dismissing the civil detention proceedings.

116.   The California Court of Appeal, Second District, concluded that the 17-year delay was caused by "a systemic 'breakdown in the public defender system,'" and that such a delay resulted in the violation of Mr. Vasquez's fourteenth amendment due process rights.

## V.

## FIRST CLAIM FOR RELIEF

**DELIBERATE INDIFFERENCE CAUSING VIOLATION OF CONSTITUTIONAL RIGHTS, AS TO DEFENDANTS RONALD BROWN, KELLY EMLING, MICHAEL SUZUKI, JENNY BROWN, RUBEN MARQUEZ, DANIEL KUPERBERG, MARK RIDLEY-THOMAS, DOES 1 THROUGH 10**

117.   Plaintiff George Vasquez repeats and realleges each and every allegation above as though fully set forth herein.

118.   This action is brought pursuant to 42 U.S.C. §1983 for violation of Mr. Vasquez's rights under Sixth Amendment and Fourteenth Amendment of the U.S. Constitution.

119.   Plaintiff is informed and believes, and thereon alleges, that The Law Offices of the Los Angeles County Public Defender, its SVP Unit, deputy public defenders, Ronald Brown, Kelly Emling, Michael Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Mark Ridley-Thomas and DOES 1 through 10 failed to

timely bring Mr. Vasquez's case to trial as well as a large group of cases involving petitions seeking the indeterminate commitment of persons.  By thus abandoning the present plaintiff and the other similarly situated persons in their charge, said defendants allowed the present plaintiff, and other similarly situated persons, to be held as pre-trial detainees for such inordinately long periods of time that their due process rights and their rights to a speedy trial were violated.  Plaintiff, for example, spent 17 years waiting for his case to come to trial before his case was dismissed for due process violations.  Other similarly situated persons remain in custody and have spent up to 20 years waiting for the Public Defender's Office to bring their cases to trial.

120.   On or before Mr. Vasquez's underlying case/petition was dismissed, defendant the Public Defender's Office, its SVP Unit, and the deputy public defenders working in that unit, failed to exercise reasonable diligence carrying out their duties to their SVP clients and failed to carry out their ethical obligations under the California State Bar's Rules of Professional Responsibility, such that Mr. Vasquez and other similarly situated persons were made to unnecessarily spend years as pre-trial detainees waiting for their cases to be brought to trial.

121.   These massive delays in the bringing to trial of the SVP cases were the result of the following misconduct and professional failures by The Public Defender's Office, its SVP Unit, and the deputy public defenders working in that unit:

a.   Failing to regularly bring their clients to court for hearings, or to otherwise ensure that their clients are in court or that they would appear by video conference, so as to conceal from their clients their delays in processing their cases in a timely manner;

b.   Failing to communicate to their clients the status of their cases, the strategies which were to be employed in defending their case, and the likelihood of success of their efforts;

35

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

c.    Failing to obtain consent to continue hearing dates, trials dates as well as other deadlines which were in their control;

d.    Waiving of their clients' appearance at hearings without securing their clients' authority to do so;

e.    Agreeing to repeated continuances sought by the prosecution;

f.    Ignoring their clients' requests to bring their case to trial promptly;

g.    Failing to meet reasonable deadlines in their clients' cases;

h.    Failing to timely secure experts, to ensure that such experts are properly prepared, and to ensure that such experts complete their work in a timely fashion;

i.    Allowing experts' reports to lapse or otherwise go stale;

j.    Concealing material facts from their clients;

k.    Concealing their misconduct from their clients;

l.    Failing to inform their clients of conflicts of interests;

m.    Failing to inform the court of conflicts of interest;

n.    Failing to bring cases to trial within the stipulated time period with the District Attorney's Office after the passage of Proposition 83;

o.    Failing to file oppositions to motions and other petitions by the prosecution;

p.    Allowing SVP cases to sit idle for years without meaningful progress;

q.    Failing to recommend to their supervisors that a declaration of unavailability be declared;

r.    Failing to declare unavailability;

s.    Failing to recommend to their supervisors that a conflict of interest be declared so as to permit their SVP clients to file *Litmon* motions after extensive delays in the processing of their cases,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

t.    After extensive delays on their part, failing to inform their clients of their right to file a motion under *People v. Litmon* for the violation of their constitutional rights.

122.   Defendants Ronald Brown, Kelly Emling, Michael Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Mark Ridley-Thomas and DOES 1 through 5 were aware of the inordinate and excessive delay that plaintiff and the other SVP detainees were experiencing in the processing of their cases and that said cases were not being brought to trial in a timely basis. Said defendants were aware of the customs and practices described above that existed at the SVP Unit and which were the causes of the failure to bring these cases to trial in a timely fashion.

123.   Between 2000 and 2017, defendants Ronald Brown, Kelly Emling, Michael Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Mark Ridley-Thomas and DOES 1 through 5 learned of these delays and of the causes of SVP cases not coming to trial in a timely basis through their regular monitoring of the SVP Unit and the monitoring of the performance of the lawyers in that unit.  Said monitoring by defendants Ronald Brown, Kelly Emling, Michael Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Mark Ridley-Thomas and DOES 1 through 5 consisted of:

a.    Monthly meetings with the supervisors of the SVP Unit,

b.    Monthly meetings with the staff of the SVP Unit,

c.    Annual performance evaluations of the supervisors and staff of the SVP Unit,

d.    Annual analysis of each individual SVP case, the SVP Unit case load, the SVP Unit projections for staff needs and the expert needs conducted during the preparation of the SVP Unit budget for presentation to the Los Angeles County Board of Supervisors.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

e.   Direct participation in the litigation of SVP cases, such as approving requests for expert evaluations, participating in decisions to appeal trial-court rulings, the preparation and/or review of appellate briefs regarding such decisions, and the monitoring of the outcome of such appeals (see e.g., *Arnold v. Superior Court*, (2014) unpublished opinion involving SVP defendant who was challenging an SVP mental health examination and noting critically that "… defendant was evaluated by the hospital's department in 2007. But as of September 2013, his case had not been tried.")

124.   Defendant Mark Ridley-Thomas and DOES 6 through 10 learned of the above-mentioned dramatic trial delays in the SVP cases and of the causes of SVP cases not coming to trial in a timely basis through their regular monitoring of the Public Defender's Office and through their monthly meetings with defendants Ronald Brown, Kelly Emling, Jenny Brown, Ruben Marquez, Daniel Kuperberg, and Michael Suzuki.

125.   Defendant Ridley-Thomas was the member of the Los Angeles County Board of Supervisors who was responsible for monitoring the performance of the Public Defender's Office and for Public Defender's budget.  He regularly met with defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, and Daniel Kuperberg to discuss the issues surrounding the performance of the Public Defender's Office.   As early as 2008, defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, and Daniel Kuperberg regularly discussed the significant delays in the processing of pending SVP cases with Ridley-Thomas.  They informed him of the significant backlog of work in the SVP Unit, the need for more funding, and the great delays that were occurring in the bringing of these cases to trial.   As early as 2008, they informed defendant Ridley Thomas of the names of the various persons, including Mr. Vasquez, who were awaiting trial in their SVP case

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  and informed Mark Ridley-Thomas of the number of years each SVP client had been

2  waiting for trial.

3      126.   Every member of the Los Angeles County Board of Supervisors,

4  including defendant Mark Ridley-Thomas, is allotted millions of dollars each year in

5  discretionary funds.  Rather than spend such funds to provide for additional staff in

6  the SVP Unit of the Public Defender's Office, defendant Mark Ridley-Thomas

7  directed those discretionary funds to illicit and corrupt purposes in deliberate

8  indifference to the constitutional rights of Mr. Vasquez and other similarly situated

9  SVP detainees.

10     127.   Besides discussing the long delays in bringing the SVP cases to trial,

11 defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, and

12 Daniel Kuperberg regularly wrote defendant Mark Ridley-Thomas emails,

13 memoranda, meeting summaries and other written documents discussing the delay in

14 processing these cases.   At least once annually, during the budget discussions

15 between defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez,

16 Daniel Kuperberg, Ridley-Thomas and DOES 1 through 10 from 2008 to 2015, these

17 defendants discussed the SVP Unit's significant backlog of cases which had not

18 reached trial in five years, ten years and, eventually, 20 years.   Annually, and often

19 quarterly, all of these defendants collectively discussed with respect to the SVP trial

20 delays:

21         a.    Whether the delay in bringing these cases to trial violated the due

22               process rights and speedy trial rights of the detainees, including Mr.

23               Vasquez;

24         b.    The costs of bringing these cases to trial;

25         c.    Civil liability for failing to bring these cases to trial;

26         d.    The reasons for the delays in bringing the cases to trial;

27         e.    The delays occasioned by the lapsing of the expert reports;

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

f.     The poor performance of the SVP Unit lawyers;

g.     The repeated requests for continuances by the SVP lawyers and prosecutors;

h.     Implementing new procedures and policies to ensure that the SVP cases got to trial in a timely fashion; and,

i.     Assigning a specific judicial officer or courtroom for SVP cases;

128.   During every year between 2000 and 2017, defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Mark Ridley-Thomas and/or DOES 1 through 5, were aware of the great failures of the SVP unit in getting a large number of SVP cases to trial in a timely fashion, including Mr. Vasquez's case.  On a monthly basis during that time, said defendants learned of continuances of trial dates and other related dates which continued to extend the time in which the SVP cases would come to trial.  Notwithstanding this information, said defendants failed to:

a.     Implement policies and procedures to advance or otherwise expedite the bringing of the SVP cases to trial;

b.     Prioritize resources to the oldest SVP cases to ensure they would get to trial in an expedited fashion;

c.     Discipline deputy public defenders who repeatedly failed to bring old SVP cases to trial;

d.     Institute tighter controls over supervisors in the SVP Unit to ensure that they managed their subordinates in a fashion that ensured that the older SVP cases would get to trial promptly;

e.     Impose time limits for the bringing of SVP cases to trial;

f.     Declare conflicts or declare "unavailability" in old SVP cases so as to ensure that the courts could appoint private counsel or counsel from the alternate public defender's office to bring SVP cases to trial; and,

40

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

g.   Declare conflicts or declare "unavailability" in those older SVP cases that were subject to a *Litmon* motion so as to permit the court to appoint private counsel to represent those detainees who had valid grounds to bring such motions.

129.   Despite knowing of the great magnitude of the delays in bring hundreds of SVP cases to trial, defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Mark Ridley-Thomas and DOES 1 through 5 failed to take any reasonable measures to ensure that the constitutional rights of the SVP detainees, including Mr. Vasquez, were protected.  Such failure constituted deliberate indifference to the due process rights and the speedy trial rights of Mr. Vasquez and other similarly situated SVP detainees.

130.   Defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Mark Ridley-Thomas and DOES 1 through 5 knowingly refused to terminate the acts, customs, practices and misconduct of their subordinates, which they knew was causing and would cause constitutional injury upon the SVP detainees in their charge. Said defendants failed to take reasonable measures to institute new policies, practices, procedures and customs to address the long delays in getting SVP cases to trial, they failed to institute new training of their subordinates in the management of SVP cases so as to ensure that SVP cases got to trial in a timely fashion, and they failed to discipline their subordinates for failing to get the SVP cases to trial in a timely fashion.  All of these failures on the part of defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Mark Ridley-Thomas and DOES 1 through 5 constituted an acquiescence in the constitutional deprivations that resulted or constituted a reckless and callous indifference to the rights of SVP detainees, including Mr. Vasquez and other similarly situated SVP detainees.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

131.   Every year between 2000 and 2017, defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Ridley-Thomas and/or DOES 1 through 10, through the aforementioned monitoring of the SVP Unit, were made aware of the extended delays in the SVP cases and of the resulting due process violations that the SVP detainees were suffering.

132.   Mark Ridley-Thomas and DOES 6 through 10, received in-person and written reports from defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, and DOES 1 through 10 as to the great delays in bringing the SVP cases to trial.  Defendants Mark Ridley-Thomas and DOES 6 through 10 were responsible for the institution of policies and procedures to correct this unconstitutional condition, but failed to do so. Such failure constituted deliberate indifference to the due process rights and the speedy trial rights of Mr. Vasquez and other similarly situated SVP detainees.

133.   Defendants Mark Ridley-Thomas and DOES 6 through 10 knowingly refused to terminate the customs, practices and misconduct of their subordinates, which they knew were causing and would continue to cause constitutional injury upon the SVP detainees, including Mr. Vasquez.

134.   Defendants Mark Ridley-Thomas and DOES 6 through 10 failed to take reasonable measures to institute new policies, practices, procedures and customs to address the long delays in getting SVP cases to trial, they failed to institute new training of their subordinates in the management of SVP cases so as to ensure that SVP cases got to trial in a timely fashion, and they failed to discipline their subordinates, including defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, and Daniel Kuperberg for failing to get the SVP cases to trial in a timely fashion.  These failures on the part of defendants Mark Ridley-Thomas and DOES 6 through 10 constituted an acquiescence in the constitutional deprivations

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   that resulted or constituted a reckless and callous indifference to the rights of SVP

2   detainees, including Mr. Vasquez and other similarly situated SVP detainees.

3        135.   Defendant Mark Ridley Thomas was particularly indifferent to a

4   tremendous degree in his disregard for the violation of the constitutional rights of the

5   SVP detainees in general and of the violation of the connotational rights of Mr.

6   Vasquez specifically.  Defendant Mark Ridley-Thomas forbade the Public Defender's

7   Office and its supervisors and administrators, including Defendants Ronald Brown,

8   Emling, Suzuki, Jenny Brown, Ruben Marquez, and Daniel Kuperberg from

9   "declaring unavailability in SVP cases; that is, to declare to the court that the public

10  defender's office is "unavailable" or unable to meet its obligations and duties to the

11  SVP clients and thereby have the court assign these cases to another public defender

12  agency (such as the Office of the Alternate Public Defender) or to a private panel

13  attorney.   Defendant Mark Ridley-Thomas refused to allow the PD's office to

14  "declare unavailability" in the SVP cases despite knowing the following:

15        a.   That the SVP unit was significantly backlogged in the processing of SVP

16             cases and that the majority of the SVP cases were years delayed in

17             getting to trial and would continue to be so backlogged;

18        b.   That the SVP Unit attorneys were excessively overworked with

19             extremely heavy caseloads that could not be processed and brought to

20             trial in a meaningful and effective way;

21        c.   That the caseload for the SVP Unit was exacerbated by a 50% reduction

22             in staff attorneys and administrative staff such as paralegals and

23             investigators; and,

24        d.   That less than 50% of the pending SVP cases would ever get to trial

25             within 10 years.

26        136.   Defendant Mark Ridley-Thomas knew that this exacerbated backlog of

27  SVP cases would be efficiently and meaningfully processed to trial by having the

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   PD's office "declare unavailability" in the older SVP cases, including Mr. Vasquez's

2   case, so that the court could assign such cases to other agencies or panel attorneys for

3   trial or other proceedings such as *Litmon* motions.

4       137.   Defendant Mark Ridley-Thomas forbade such declarations so as to not

5   have to pay for panel attorneys or incur additional costs in the processing of SVP

6   cases.  He forbade such declarations despite knowing that failing to do so would

7   cause years of prolonged unconstitutional detention of SVP detainees such as the

8   present plaintiff.  Rather than spend the allocated discretionary funds to provide for

9   additional staff in the SVP Unit of the Public Defender's Office, defendant Mark

10  Ridley-Thomas directed those discretionary funds to illicit and corrupt purposes in

11  deliberate indifference to the constitutional rights of Mr. Vasquez and other similarly

12  situated SVP detainees.

13      138.   As a result of the above deliberate acts and omissions of defendants

14  Brown, Emling, Suzuki, Ridley-Thomas and DOES 1 through 10, Plaintiff was

15  damaged and injured as alleged above by being made to endure a wrongful 17-year

16  pre-trial detention which the Los Angeles County Superior Court found to have

17  violated Mr. Vasquez's civil rights.

18      139.   The conduct of defendants Ronald Brown, Kelly Emling, Michael

19  Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Mark Ridley-Thomas and

20  DOES 1 through 10, as alleged above, was done with deliberate indifference to the

21  constitutional violations endured by the present plaintiff.  As such, punitive damages

22  should be imposed, in an amount sufficient to punish said defendants and to deter

23  future similar conduct by said defendants and others in similar positions.

24  ////

25  ////

26  ////

27  ////

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

# VI.

## SECOND CLAIM FOR RELIEF

**MUNICIPAL LIABILITY FOR VIOLATION OF CONSTITUTIONAL RIGHTS AS TO DEFENDANTS COUNTY OF LOS ANGELES AND LAW OFFICES OF THE LOS ANGELES COUNTY PUBLIC DEFENDER**

140.   PLAINTIFF repeats and realleges each and every allegation above as though fully set forth herein.

141.   This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiff's rights under the Fourteenth Amendment.

142.   Plaintiff's due process rights were violated by the 17-year delay in bringing his case to trial as determined by the Los Angeles Superior Court and as alleged above in the first claim for relief.  As a result of the aforementioned acts and omissions of defendants Ronald Brown, Emling, Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Ridley-Thomas and DOES 1 through 10, plaintiff's Fourteenth Amendment due process rights were violated.

143.   At the time of these constitutional violations by said defendants, defendant County of Los Angeles and defendant Public Defender's Office had in place, and had ratified customs and practices which permitted and encouraged attorneys in the Public Defender's Office to delay bringing SVP cases to trial and which violated the due process right of their SVP clients, including Mr. Vasquez.

144.   These practices, customs, policies and procedures included:

a.     Failing to regularly bring their clients to court for hearings, or to otherwise ensure that their clients are in court or that they would appear by video conference, so as to conceal from their clients their delays in processing their cases in a timely manner;

45

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

b.    Failing to communicate to their clients the status of their cases, the strategies which were to be employed in defending their case, and the likelihood of success of their efforts;

c.    Failing to obtain consent to continue hearing dates, trials dates as well as other deadlines which were in their control;

d.    Waiving of their clients' appearance at hearings without securing their clients' authority to do so;

e.    Agreeing to repeated continuances sought by the prosecution;

f.    Ignoring their clients' requests to bring their case to trial promptly;

g.    Failing to meet reasonable deadlines in their clients' cases;

h.    Failing to timely secure experts, to ensure that such experts are properly prepared, and to ensure that such experts complete their work in a timely fashion;

i.    Allowing experts' reports to lapse or otherwise go stale;

j.    Concealing material facts from their clients;

k.    Concealing their misconduct from their clients;

l.    Failing to inform their clients of conflicts of interests;

m.    Failing to inform the court of conflicts of interest;

n.    Failing to bring cases to trial within the stipulated time proposed by the District Attorney's Office after the passage of Proposition 83;

o.    Failing to file oppositions to motions and other petitions by the prosecution;

p.    Allowing SVP cases to sit idle for years without meaningful progress;

q.    Failing to recommend to their supervisors that a declaration of unavailability be declared;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

r.    Failing to recommend to their supervisors that a conflict of interest be declared so as to permit their SVP clients to file *Litmon* motions after extensive delays in the processing of their cases; and,

s.    After extensive delays on their part, failing to inform their clients of their right to file a motion under *People v. Litmon* for the violation of their constitutional rights.

145.    Deliberate indifference to the civil rights of SVP detainees such as Mr. Vasquez was evidenced by said defendants' ignoring the long delays in the bringing of SVP cases to trial and the long pre-trial detentions suffered by SVP clients.

146.    Further deliberate indifference by these defendants was evidenced by the following acts and omissions:

a.    Failing to implement policies and procedures to advance or otherwise expedite the bringing of the SVP cases to trial;

b.    Failing to prioritize resources to the oldest SVP cases to ensure they would get to trial in an expedited fashion;

c.    Failing to discipline deputy public defenders who repeatedly failed to bring old SVP cases to trial;

d.    Failing to institute tighter controls over supervisors in the SVP Unit to ensure that they managed their subordinates in a fashion that ensured that the older SVP cases would get to trial promptly;

e.    Failing to impose time limits for the bringing of SVP cases to trial;

f.    Failing to declare conflicts or to declare "unavailability" in old SVP cases so as to ensure that the courts could appoint private counsel or counsel from the alternate public defender's office to bring SVP cases to trial; and,

g.    Failing to declare conflicts or declare "unavailability" in those older SVP cases that were subject to a *Litmon* motion so as to permit the court

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

to appoint private counsel to represent those detainees who had valid grounds to bring such motions.

147.   The foregoing acts, omissions, and systemic deficiencies are and were customs, practices, policies and procedures of defendant County of Los Angeles and of defendant Public Defender's Office and by ratifying such, these defendants permitted and encouraged attorneys in the Public Defender's Office to delay in bringing SVP cases to trial in a timely fashion.  This caused, permitted and/or allowed under official sanction the attorneys of the Public Defender's Office to believe that the long delays in bringing SVP cases to trial would not be objectively, thoroughly and/or meaningfully investigated and that no negative consequences would befall them, all with the foreseeable result that said attorneys would greatly delay in bringing SVP cases to trial and thereby violate the civil rights of the SVP detainees in their charge.

148.   As a direct and proximate result of the aforementioned acts alleged herein, Mr. Vasquez has now been detained for 18 years in violation of his due process rights as alleged in the first claim for relief which caused him serious and permanent injuries and have physically, psychologically, and emotionally impaired him permanently.

149.   As a result of the above customs, practices, policies and procedures of defendant County of Los Angeles and of defendant Public Defender's Office, Mr. Vasquez was damaged and injured as alleged above by being made to endure a wrongful 17-year pre-trial detention.

## PRAYER

Wherefore, plaintiff George Vasquez demands the following relief, against all the defendants with respect each of the claims for relief above:

a.   Compensatory general and special damages in an amount in accordance with proof;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

b. Punitive and exemplary damages, against defendants Ronald Brown, Kelly Emling, Michael Suzuki, Jenny Brown, Ruben Marquez, Daniel Kuperberg, Mark Ridley-Thomas, and DOES 1 through 10 in an amount sufficient to deter and to make an example of these defendants;

c. Reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. §1988;

d. Costs of suit necessarily incurred herein; and,

e. Such further relief as the Court deems just or proper.

Dated: September 14, 2018   CASILLAS & ASSOCIATES

          By: _/s/  Arnoldo Casillas_
          ARNOLDO CASILLAS
          DANIEL W. GILLETTE
          Attorneys for Plaintiff
          GEORGE VASQUEZ

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff George Vasquez and respectfully demands that the present matter be set for a jury trial.

Dated: September 14, 2018                CASILLAS & ASSOCIATES

By: _/s/   Arnoldo Casillas_
ARNOLDO CASILLAS
DANIEL W. GILLETTE
Attorneys for Plaintiff
GEORGE VASQUEZ

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**